341 A.2d 108

In re Henry Mason REED ESTATE.

**Appeal of the UNION NATIONAL BANK OF PITTSBURGH.**

Supreme Court of Pennsylvania.

Argued March 13, 1975.

Decided July 7, 1975.

Robert F. Patton, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, for appellant.

John J. Kennedy, Jr., Asst. Atty. Gen., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Decedent, Henry Mason Reed, died on August 31, 1970, leaving a will appointing the appellant, the Union National Bank of Pittsburgh, and his widow, Elizabeth McCullough Reed, as co-executors thereof. On September 24, 1973, the co-executors filed a Statement of Debts and Deductions with the Westmoreland County Register of Wills claiming as deductions for inheritance tax purposes $81,922.66 in administrative expenses. Included in this sum were executors' commissions of $43,000.00. Thereafter, on October 29, 1973, the Pennsylvania Department of Revenue notified the appellant that the sum of $66,922.66 was deductible. The reason given for the reduction from the amount claimed was the disallowance of executors' fees in the amount of $15,000.00.

Thereafter, the appellant filed a petition for the allowance of deductions pursuant to Section 707 of the Inheritance and Estate Tax Act of 1961.[1] After a hearing

1. Act of June 15, 1961, P.L. 373, Art. VII, § 707, 72 P.S. § 2485–707. This section provides that the official with whom the inher-

was held thereon, the Orphans' Court determined that the amount of $43,000 paid appellant was not a reasonable expense of administration of the decedent's estate. A decree was entered allowing $31,000.00 in executors' fees. Appellant filed exceptions to the foregoing decree and to a subsequent decree of distribution. In both instances exceptions were dismissed. These appeals followed.

It is well-established that a fiduciary is entitled to deduct "all reasonable expenses of administration of the decedent's estate and of the assets includable in the decedent's taxable estate." Act of June 15, 1961, P. L. 373, Art. VI, § 611, 72 P.S. § 2485–611. Further, such deductions have always been held to include the "fair and just compensation for services rendered" by the fiduciary. *Williamson Estate,* 368 Pa. 343, 349, 82 A. 2d 49, 52 (1951); *Wolfsohn Estate,* 20 Pa.D. & C.2d 639 (O.C.Phila.1960); 1970, P.L. 336, Act No. 108 *adding* Section 738 to Fiduciaries Act of 1949, 20 P.S. § 320–738. *See* Fiduciary Review, June 1970, p. 2. Since that which is "fair and just" compensation depends upon the extent and character of the labor and the responsibilities involved, courts will normally assess the nature and quality of the fiduciary's performance before determining the appropriateness of compensation. *See Wallis Estate,* 421 Pa. 104, 218 A.2d 732 (1966); *Strickler Estate,* 354 Pa. 276, 277, 47 A.2d 134, 135 (1946).

In this case both the Orphans' Court judge and the court en banc concluded that the work performed by appellant was done with a "high degree of competency." [2]

itance tax return is filed determines the allowance or disallowance of deductions. Thereafter, at the request of the fiduciary at the audit of his account, the court "may determine and allow, as deductions, all properly deductible credits claimed in the account or allowed at the audit, without requiring the filing of a separate claim for them, and the court may thereupon fix the amount of the tax and decree payment thereof . . . ."

2. The record clearly established that the inventory value of decedent's estate at the date of death was $1,568,156.20, that between the date of death and the date of audit the securities retained in

Further, the duties performed were found to be those normally performed in estates of a comparable size.

The lower court's assessment, when coupled with uncontradicted [3] evidence indicating that (1) the executors' commissions charged were in accordance with the appellant's regular schedule of fees,[4] (2) the fees were no greater, and in some cases less, than amounts charged by other corporate fiduciaries in Western Pennsylvania for estates of comparable size, and (3) the Department of Revenue and the courts had permitted comparable deductions for inheritance tax purposes of fees in estates of comparable size, leads us to conclude that, based on the record below, the court erred in disallowing the claimed deduction.

In the past we have held that as a matter of convenience, the compensation of a fiduciary may be arrived at by way of percentage. *Williamson Estate, supra,* 368 Pa. at 349, 82 A.2d at 52. *See also* Hunter's Commonplace Book, Vol. I, § 2(b), p. 254 *et seq.* In a series of cases, culminating in *Wallis Estate,* 421 Pa. 104, 218 A. 2d 732 (1966), a rule evolved that allowance for executor's fees of 3% of the appraised value of the corpus at the time of transfer to the fiduciary for administration is prima facie fair and reasonable. *See Quigley's Estate,*

the estate and the securities distributed by the executors to testamentary trusts for decedent's grandchildren increased substantially in value and that, through the efforts of the executors, considerable tax savings (greater in fact than the commissions paid to appellant) to the estate were made.

3. The Department of Revenue offered no evidence and entered no appearance at the proceedings below.

4. The lower court noted that decedent was a former employee of the appellant, having worked in the Trust Department for a period of twenty-five years. Because of this relationship, the court concluded that any services performed prior to decedent's death were probably rendered because of the former friendly employee-employer relationship. However, since appellant does not appear to have claimed additional compensation for such services, charging only its regular commission for estate work, this would not explain the reduction in fees required by the court.

329 Pa. 281, 198 A. 85 (1938); *Gardner's Estate*, 323 Pa. 229, 185 A. 804 (1936); *Wolfsohn Estate*, 20 Pa.D. & C. 2d 639 (O.C.Phila.1960). This test, however, is merely a "rule of thumb," the true test being what the services actually were worth. Therefore, it follows that where there is evidence that the services are actually worth more or less than what is prima facie reasonable, as, for example, where the fiduciary performed extraordinary duties (*Garner's Estate, supra; Wolfsohn Estate, supra*) or where the performance falls below accepted norms (*Lohm Estate*, 440 Pa. 268, 273–74, 269 A.2d 451, 456 (1970)), the amount of compensation may be increased or decreased accordingly.

In the present case, the lower court was presented with no evidence compelling departure from the prima facie rule. Rather, the only evidence presented indicated appellant had in a timely and competent fashion discharged the "regular" set of fiduciary obligations in estates of this size.[5] Nevertheless, in the face of this evidence, the court, without explanation, found that the 2.-7% charged by appellant *exceeded* the normal and usual fee charged by executors.

In a similar case, where the hearing judge disallowed counsel fees for services to the executor, this Court concluded:

"Had reasons been given which fairly warranted the reduction, or had the items of service for which the charge was deemed too high been pointed out, or referred to, or had findings of fact upon disputed testimony or doubtful inferences as to the value of the services been set forth, we would be slow to question them.

5. As this Court said in McKnight Shopping Center, Inc. v. Board of Property Assessment, 417 Pa. 234, 209 A.2d 389 (1965), the taxing authority can "do nothing except at the risk of having the [taxpayer's] testimony accepted by the court. Where [the taxpayer's] testimony is relevant and credible, it is entitled to be given weight; and unless it is rebutted, it must necessarily be accepted."

342

But with the mere naked conclusion that under the testimony the amount of the charge for services . . . was excessive, we cannot agree."

*Moore's Estate (No. 1)*, 228 Pa. 516, 522–23, 77 A. 899, 902 (1910).

It is well-settled that the supervision of compensation is peculiarly within the discretion of the Orphans' Court, *Wallis Estate, supra; Williamson Estate, supra; Strickler Estate, supra; Taylor Estate*, 281 Pa. 440, 126 A. 809 (1924). Nevertheless, where the ultimate conclusion of law is without record support, we cannot allow the decision to stand. *See Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931); *Moore's Estate (No. 1), supra.*

Decrees of the court below are vacated and the case is remanded for further proceedings consistent with this opinion. Estate to pay costs.

ROBERTS, J., did not participate in the consideration or decision of this case.