**In re: Estate of Robert J. SCHMITT, Sr.**

**Appeal of: Robert J. Schmitt, Jr.**

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.
Filed Feb. 26, 2004.
Reargument Denied April 29, 2004.

Robert J. Schmitt, Jr., appellant, Pro Se.

Richard H. Morton, West Chester, for Schmitt, appellee.

Charles E. Donohue, Philadelphia, for Com., appellee.

BEFORE: JOHNSON, LALLY–GREEN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Robert J. Schmitt, Jr., appeals from the April 3, 2003, order entered in the Orphans' Court, Chester County, which struck Appellant's caveat to the will of Robert J. Schmitt, Sr., executed on June 10, 1999, and ordered that said will be admitted to probate. Upon review, we quash the appeal.

¶ 2 Robert J. Schmitt, Sr. (Testator), was born on May 15, 1912. Testator was married to Mary Schmitt. They resided in Tenafly, New Jersey. Testator and Mary had two children, Appellant and Katherine Schmit, née Schmitt (Appellee). Testator had six living grandchildren, two grandchildren were the children of Appellant and four grandchildren were the children of Appellee.

¶ 3 Beginning in 1996, using the funds of Mary,[1] Appellant opened a series of bank accounts, either jointly in the name of Mary and Appellant with right of survivorship or naming Appellant as the party to whom the proceeds were to be payable on death of Mary. These bank accounts did not provide Appellant with ownership interest. In 1998, Testator felt that Appellant was duplicitously siphoning Mary's money through these bank accounts. Testator was able to have some of the money restored to his Mary. However, Mary died on February 11, 1999, before Testator could complete the recovery process. Because of Mary's death, Appellant received $258,000.00 from the remaining bank accounts.

¶ 4 In March 1999, Testator changed the designation on his IRA account from Mary to Appellee. On April 1, 1999, Testator executed a power of attorney naming Appellee as his attorney-in-fact. On April 23, 1999, Testator moved from New Jersey to Pennsylvania. In May 1999, following a seizure and hospitalization, Testator was admitted to an assisted living facility in Chester County, Pennsylvania.

¶ 5 During this period, Testator attempted to obtain a copy of his will executed in 1974 from Appellant. However, Appellant did not produce it. On June 10, 1999, Testator executed a will. Through the will, Testator bequeathed fourteen percent of his estate to various charities and the remainder to his grandchildren *per capita*.

¶ 6 On June 18, 1999, Appellant attempted to visit Testator at the assisted living facility. Appellant caused a disturbance, and the Tredyffrin Township Police were summoned. The police interviewed Testator, found that he was competent to express his wishes that he did not want to see Appellant, and requested Appellant to leave.

---

1. Testator was the only wage-earner between himself and Mary.

¶ 7 In December 1999, Testator's capacity began to fail. In April 2000, Appellee petitioned to be appointed guardian of Testator's person and estate. In June 2000, Testator was relocated to the dementia unit at the assisted living facility, and he died on December 4, 2000.

¶ 8 On March 1, 2001, Appellee, as executrix, offered Testator's will executed on June 10, 1999, for probate. On March 12, 2001, Appellant filed a caveat alleging that Testator was not of sound mind, memory, or understanding, was suffering from an insane delusion, was unduly influenced by Appellee, and suffered from weakened intellect when he executed his will on June 10, 1999. The Orphans' Court heard testimony on June 11 through June 13, 2002. On April 3, 2003, the court found that it was unable to conclude by clear and convincing evidence that Testator was suffering from insane delusion or was subject to undue influence when he executed his will on June 10. The court struck the caveat and ordered Testator's June 10 will admitted to probate. This timely appeal followed. The court did not order Appellant to file a 1925(b) statement. Counsel for Appellant withdrew representation; Appellant proceeded with this appeal *pro se.*

 ¶ 9 Before we address Appellant's issue, we must first determine whether the trial court order in this case is a final order subject to our review. We may raise the issue of appealability *sua sponte* because it affects our jurisdiction over the case. *See In re Estate of Borkowski,* 794 A.2d 388, 389 (Pa.Super.2002). "In order to avoid piecemeal litigation, no appeal will be permitted from an interlocutory order unless specifically provided for by statute. Otherwise, an appeal must be taken from a final order." *Id.,* 794 A.2d at 389. Under Pa.R.A.P. 341, an order is final if it disposes of all claims and all parties. In a decedent's estate, the confir-

mation of the final account of the personal representative represents the final order. *See In re Estate of Sorber,* 803 A.2d 767 (Pa.Super.2002). Thus, we have refused to entertain appeals from orders: removing daughter as trustee under will, *Sorber,* 803 A.2d 767; determining that a spouse did not waive his statutory rights by a prenuptial agreement, *In re Estate of Borkowski,* 794 A.2d 388 (Pa.Super.2002); denying a motion to vacate an order approving the sale of real estate, *In re Estate of Habazin,* 451 Pa.Super. 421, 679 A.2d 1293 (1996); denying a request to compel the executor to file exceptions, *In re Estate of Preston,* 385 Pa.Super. 48, 560 A.2d 160 (1989); and dismissing objections to an account but not expressly confirming the account or approving the proposed distribution, *In re Estate of Meininger,* 367 Pa.Super. 105, 532 A.2d 475 (1987).

¶ 10 The April 3, 2003, order struck Appellant's caveat objecting to the probating of Testator's will and ordered that said will be admitted to probate. This order simply struck the caveat and admitted the will to probate. Clearly, the order appealed from in the present case did not dispose of all claims and all parties and, thus, was not final under Pa.R.A.P. 341. Thus, it was an interlocutory order. An appeal will not be permitted from an interlocutory order unless specifically provided for by statute. This interlocutory order was not appealable as of right pursuant to Pa. R.A.P. 311 nor did the Orphans' Court certify that the interlocutory order was appealable by permission pursuant to Pa. R.A.P. 312.

¶ 11 Effective January 1, 2001, our Supreme Court amended the Rules of Appellate Procedure to provide for the appealability of orders that determine "an interest in realty, personalty, the status of individuals or entities or an order of distribution not final" under other provisions of the

Rules. Pa.R.A.P. 342.[2] Under this rule, such an order "shall constitute a final order upon a determination of finality by the Orphans' Court Division." *Id.* Absent such a determination, we do not have jurisdiction over the appeal. *See Sorber*, 803 A.2d at 769 (citation omitted). In this case, the Orphans' Court was not requested to, and did not make, a determination of finality.[3] Therefore, we do not have jurisdiction and must quash this appeal.

¶ 12 Appeal quashed.

---

2. Pa.R.A.P. 342 states:

 In addition to final orders pursuant to Subdivision (b) of Rule 341 or determined to be final under Subdivision (c) of Rule 341, an order of the Orphans' Court Division determining an interest in realty, personalty, the status of individuals or entities or an order of distribution not final under Subdivision (b) of Rule 341 or determined to be under Subdivision (c) of Rule 341 shall constitute a final order upon a determination of finality by the Orphans' Court Division.

3. Since the Orphans' Court did not make a determination of finality, we need not determine whether an order determining a testator's capacity is appealable under Pa.R.A.P. 342.